WRIGHT, J.
stated to the jury the points agreed, read the clause of the policy relied upon, and described its legal effect. He proceeded to observe: The policy contains no clause insuring against barratry, and the defendants on this policy are not liable if the loss resulted from the barratrous acts of the master or crew. It is a question of great difficulty to determine what acts amount to barrati'y. The discussions upon the inquiry as to what degree of negligence amounts to barratry, have been prosecuted to great length, without having yet defined any precise line of distinction between mere negligence and barratry. In our understanding, no act will amount to barratry which is unaccompanied by a fraudulent design. If the loss were occasioned by the ignorance and inattention of the master and mariners, though such ignorance and inattention were the remote cause of loss, yet such loss is not covered by the clause insuring’ against the perils of the river. Such hazard is not a peril of the river. Accidents which ordinary care and common prudence can avoid, rest upon the owner, not on the insurer. The insurer does not indemnify against such losses. If, therefore, you find that the Trenton was dropped down from Page’s warehouse in a manner which is unknown to the prudent navigation of that part of the river, whereby the risk was increased, the policy does not cover the risk; as to such danger the owner is his own insurer, not the person taking the risk on a general policy. It is conceded in this case that the captain was of competent skill and had a sufficient and skilful crew; and if the method adopted to drop the boat down was honestly adopted, and followed with their best judgment, the loss is within the policy; and a mere mistake of the captain and crew in not selecting the best possible mode of dropping her down, will not shift the loss from the insurer to the owner, although that mistake remotely influenced the loss. In determining all questions of this kind, regard should be had to the common sense which becomes part of such transactions, and enters into contracts connected with them. It is in this view that the general usage of the river is inquired into, and if ascertained, becomes the law of the navigation. Inasmuch as such usage is supposed to have been within the contemplation of the parties contracting, it is regarded as if it were written out in the 204] *contract, and the navigator deviates from the usage, therefore, as much at his own peril, as if the usage were fully inserted in the contract. But if the situation of the Trenton was not one of *207 general occurrence, but one as to which no general usage of overcoming or avoiding the danger had. been established or become known, by experience to he the best; as to which no particular mode of proceeding had ripened into common zcsage, in such cases, men may honestly differ in opinion as to the safest method of managing the vessel, and the soundest judgments be led to different expedients to overcome impending danger. Where such is the situation of things the insurer is held liable to answer for injury resulting from circumstances not overcome by such efforts. Such should be the case, if the master, of competent skill, in an emergency adopted the course his best judgment dictated, and honestly exerted his skill and judgment to secure the safety of the boat, though other masters looking back upon the situation as described, with equal honesty and ability think they would have adopted a different course had they been in his place. Their opinions are not now entitled to much weight in settlingthat matter, because not known to the captain of the Trenton when he was called to act, though they may henceforth be taken as the precepts of experience; not being known by him when he acted, as the opinion of those experienced individuals, nor embodied with the usage of the river, the captain cannot be held as governed by them. The judgments of men of equal experience are not all alike; the master of a boat must act in an emergency with the best lights he has, not wait for consultation, lest ruin should overwhelm him. It would be unjust to hold him responsible upon the mere opinion of others, formed after the event, upon imperfect representations of the facts and circumstances on which he acted. Results in such cases depend on things beyond the mere physical exertions of the operative. The owner or navigator bears the loss if he fail in bringing to the emergency ordinary skill and an honest application of it, otherwise the insurer.
If you find it proven to your satisfaction that, as to boats situated as the Trenton was at the warehouse, there was at that time an established usage of the navigation, to adopt a particular mode to drop them down to the harbor, and the master of the Trenton adopted another method of getting her down, and the boat was wrecked while he was pursuing such unusual course, was struck with a sudden flaw of wind and wrecked, the loss does not fall upon the insurer, because the master deviates from the ordinary course of the navigation at his peril, and takes upon himself and his owners all *the dangers incident to such deviation. If, also, you find him [205 grossly negligent, the loss rests upon the master and owners, not the insurer. If, on the other hand, you are not satisfied there was any *208 known and established usage of the river in such cases, to drop vessels down in a particular way, and the master was skilful himself, and had a competent and skilful crew, he will be presumed honestly to have adopted the method of dropping her down which has been described, unless the contrary be shown by affirmative evidence by the defendants. The burthen of proving want of skill and negligence rests with them, as they allege it in their defence, and in this, as in all other cases, the party alleging a fact takes upon himself the burthen of proving it, and if they fail, or leave it in doubt, they leave the case as to such fact against them.
Special verdict for the plaintiff for $1,283.55, including $398, wages of the crew of the boat while on the rocks. The motion for judgment on this verdict was reserved for decision at the court in Bank. That court rejected the item for $398, on the authority of the case in 5 O. 306, and gave the plaintiff judgment for the residue of the verdict; 6 O. 72.
[Negligence is to be proved by the party who alleges it; cited in diss. op. L. M. R. R. v. Stevens, 20 O. 415, 446.]